```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------  X
                                                                       :
UNITED STATES OF AMERICA,                                              :    21-CR-495 (ARR)
                                                                       :
     -versus-                                                          :    NOT FOR ELECTRONIC
                                                                       :    OR PRINT PUBLICATION
GERMAINE RAMSEY,                                                       :
                                                                       :
                      Defendant.                                       :    OPINION & ORDER
                                                                       :
---------------------------------------------------------------------  :
                                                                       X
```

ROSS, United States District Judge:

Before me are defendant Germaine Ramsey's motions *in limine* to (1) preclude the government from offering evidence concerning her bank records, *see* ECF No. 55 ("Bank Records Mot."), and (2) preclude the government from offering the expert testimony of FBI Agent Elisabeth Wheeler, *see* ECF No. 57 ("Def.'s Wheeler Mot.").[1] Also before me is Ms. Ramsey's response to the government's prior motion to preclude certain cross examination of USPS Office of the Inspector General ("USPS OIG") Agent Russell Strasser related to statements made during his appearances in media as "Geoff Symon," author of a book series titled "Forensics for Fiction." *See* ECF No. 41 ("Gov't Strasser Mot."); ECF No. 60 ("Def.'s Strasser Opp'n"). For the following reasons, I (i) deny Ms. Ramsey's motion to preclude the government from offering her bank records; (ii) deny Ms. Ramsey's motion to preclude testimony from Agent Wheeler; and (iii) grant in part and deny in part the government's motion as to Agent Strasser. This opinion also addresses the parties' objections to my most recent draft of the jury charge. *See* ECF No. 64 (government's

---

[1] Ms. Ramsey also moved to preclude the government from identifying her as "Elder Ramsey" or "Pastor Ramsey." *See* Bank Records Mot. 2. Because the government has indicated that it will not refer to Ms. Ramsey by either of these names, *see* Gov't Opp'n to Bank Records Mot. 1 n.1 ("Bank Records Opp'n"), ECF No. 58, this issue is moot.

objections); ECF No. 65 (defendant's objections). An updated draft is attached to this opinion along with a draft verdict sheet. I direct the parties to file any further objections to the jury charge or verdict sheet by no later than 5 p.m. today, March 22, 2023.

## BACKGROUND

Knowledge of the facts of this case is assumed. I will only summarize matters relevant to this opinion.

### *Bank Records*

On March 15, 2023, Ms. Ramsey filed a motion *in limine* to preclude the government from utilizing her bank records, noting that the government had "not moved to admit these records or articulated a basis for their admission." Bank Records Mot. 1. On March 16, 2023, the government filed a letter clarifying its intended use of the bank records. *See* Bank Records Opp'n. On March 20, 2023, Ms. Ramsey filed a sealed reply asserting that the proffered use of the bank records still fails to satisfy the requirements of the Federal Rules of Evidence. *See* Def.'s Reply in Supp. Bank Records Mot. ("Bank Records Reply") (under seal).

### *Agent Wheeler*

On March 14, 2023, the government filed a letter concerning its intent to call Agent Wheeler to testify regarding historical cell site analysis. Mar. 14, 2023 Gov't Ltr., ECF No. 53. In my order of March 15, 2023, I denied defendant's motion to preclude the government's anticipated expert on this same topic, Piotr Orlowski, on the grounds that he was qualified and his testimony would be reliable. Mar. 15, 2023, Op. & Order 34–40, ECF No. 54. On March 16, 2023, Ms. Ramsey moved to preclude Agent Wheeler's testimony on the grounds of inadequate disclosure, *see* Def.'s Wheeler Mot., and the government provided a more detailed disclosure on March 17, 2023, *see* ECF No. 59.

2

*Agent Strasser*

In conjunction with its initial motion *in limine* dated February 13, 2023, the government discussed USPS OIG Agent Strasser's appearances as author "Geoff Symon," including his participation in certain YouTube videos, talks, and podcasts. *See* Gov't Strasser Mot. 14. Agent Strasser is not the actual author; rather in these appearances he played the role of "Geoff Symon" at the behest of the true author, who uses "Geoff Symon" as a pen name. *See id.* After the defendant represented that the government had not fully provided *Giglio* material relating to Agent Strasser's appearances as Geoff Symon, I ordered the government to complete its disclosures. *See* Mar. 15, 2023, Op. & Order 20. After the disclosures were made, defendant moved to allow certain cross-examination of Agent Strasser and for me to compel the government to disclose the USPS OIG policy on polygraphs and Agent Strasser's CV so that she may fully evaluate the truth of certain statements made during his appearances as Geoff Symon. Def.'s Strasser Opp'n 2–3.

I. **Ms. Ramsey's Bank Records Are Admissible**

The government has clarified that it intends to use Ms. Ramsey's bank records to establish that the money Ms. Ramsey and her fiancé allegedly stole was used to purchase two money orders totaling $4,000 on December 22, 2019. Bank Records Opp'n 1. Defendant's bank records will be used to establish that Ms. Ramsey did not pay for the $4,000 in money orders using her bank accounts, because the withdrawals from her accounts in the weeks prior to her purchasing the money orders are not "sufficient to add up to the $4,000." *Id.* at 2. Ms. Ramsey argues that the "government's argument presupposes that the only possible sources of the [money] . . . were these two bank accounts, and that she did not have any other cash on hand," and continues to assert that the government's true purpose in offering the bank records is to encourage the inference that she committed the crimes alleged because she is poor. Bank Records Reply 1. She also represents that the money orders at issue were obtained following the resolution of a dispute between Ms. Ramsey

3

and her landlord during which Ms. Ramsey withheld rental payments, and that Ms. Ramsey had made at least one sizable rent payment via money order prior to the robbery. *Id.* at 2. In order to avoid having to explain this background to the jury, Ms. Ramsey argues that I should preclude the evidence under Rule 403. *Id.* The government responds that at the time of the December 22, 2019 money order, Ms. Ramsey was at risk of being evicted from her apartment, which is probative of motive for the alleged theft. *See* Gov't Bank Records Sur-Reply 2, ECF No. 70.[2]

The government's proffered purpose for admitting Ms. Ramsey's bank records is plainly relevant as that term is defined in Federal Rule of Evidence 401, because it makes the fact of Ms. Ramsey's participation in the robbery more probable than would the evidence of Ms. Ramsey's purchase of the $4,000 in money orders, standing alone. *See* Fed. R. Evid. 401. That Ms. Ramsey might have an alternative explanation for having the cash with which she purchased the money orders goes to what conclusions the jury should draw from the evidence, but not to its admissibility. I do not think that informing the jury of Ms. Ramsey's dispute with her landlord and her corresponding need to pay large sums via money order is so prejudicial that it "substantially outweigh[s]" the probative value of the government's evidence. *See* Fed. R. Evid. 403. Defendant's reliance on *United States v. Mitchell*, 172 F.3d 1104 (9th Cir. 1999), is misplaced. In that case, the government's evidence that the defendant had paid his rent in cash on the day after a robbery was of "negligible probative value" because, *inter alia*, his landlord required rent payment in cash and the defendant's rent was in fact due that day. *Id.* at 1110. The Ninth Circuit also found that the government's use of this evidence was unduly prejudicial because "[t]he

---

[2] I agree that the docket filing should remain sealed at this time, as it contains personal identifying information about Ms. Ramsey. *See* Gov't Bank Records Sur-Reply, Ex. A, ECF No. 70-1. However, I believe that the government intends to introduce some portions of this document at trial, in which case it would be appropriate to redact the personally identifying information but allow the exhibit to be docketed.

4

prosecutor did not merely show that [the defendant] would be better off if he had a few thousand dollars more," rather she "effectively portrayed him as a feckless man who did not support his wife and children," including by allowing them to be evicted from their apartment. *Id.* The government has not suggested that it intends to make any similar arguments here, merely that it wishes to show that on December 22, 2019, defendant had the ability to purchase $4,000 in money orders without drawing on her bank account, and that she was in urgent need of cash to pay her landlord. Ms. Ramsey's motion to preclude the introduction of her bank records is denied.

## II. Agent Wheeler's Testimony Is Admissible

Ms. Ramsey contends that the government's March 14, 2023 letter concerning the testimony of Agent Wheeler was deficient under Federal Rule of Criminal Procedure 16 and that I should preclude her testimony because defendant is prejudiced by the "extremely limited time for defense counsel to review and analyze Agent Wheeler's opinions, while also preparing for trial." Def.'s Wheeler Mot. 2. The government's filing of March 14, 2023, did not contain the "complete statement of all opinions that the government will elicit from the witness[;] . . . the bases and reasons for them; . . . [or] a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition" required by Federal Rule of Criminal Procedure 16(a)(1)(G)(iii), but stated that Agent Wheeler would "testify about the cell cite location data noticed in the government's previous expert disclosure." Mar. 14, 2023, Gov't Ltr. 1. In other words, the government informed the defendant that Agent Wheeler's testimony is offered for the same substantive purposes as Mr. Orlowski, the expert witness previously identified by the government.

I have reviewed the government's completed expert disclosure of March 17, 2023, and find that it satisfies the requirements of Rule 16 for the same reasons I found the expert disclosure of Mr. Orlowski adequate, *i.e.*, it sets out the opinions the government intends to elicit from Agent

5

Wheeler and provides her conclusions in the form of PowerPoint slides showing the cell sector Ms. Ramsey and CC-1's phones were used in during relevant times. *See* ECF No. 59; Mar. 15, 2023 Op. & Order 36–37. By footnote and without citation, Ms. Ramsey argues that "[a] written summary of expert testimony is no longer sufficient under Rule 16, and a Power[P]oint slide [such as Agent Wheeler's] containing a visual depiction . . . that will require interpretive testimony at trial is certainly not sufficient." Def.'s Wheeler Mot. 2 n.1. Recent amendments to Rule 16 replaced the requirement that the government provide a "written summary" of anticipated expert testimony with the requirement that the government provide "a complete statement of all opinions . . . [and] the bases and reasons for them," however the Advisory Committee cautioned that the changed rule "does not require a verbatim recitation of the testimony the expert will give at trial." Fed. R. Crim. P. 16, Advisory Comm. Notes to 2022 Amend. The mere fact that Agent Wheeler's opinions and conclusions—which are visual by their nature—will require some "interpretive testimony" does not mean that the government has failed to satisfy Rule 16.

I further find that Ms. Ramsey has not demonstrated prejudice from the government's decision to offer Agent Wheeler instead of Mr. Orlowski. Defendant was provided cell site and call detail records in October 2021, *see* ECF No. 59 at 1, and Ms. Ramsey herself has used the cell site location information in support of her arguments in evidentiary motions, *see* Def.'s Mem. in Opp'n to Gov't Evidentiary Mot. 9 & n.1, ECF No. 42 (arguing cell site location data proved that she attended church on the day of the alleged robbery). Further, as I previously noted, defense counsel's previous filings "summarized in great detail the technology involved in [cell site location information], the typical methodologies used . . . and potential flaws," and "counsel is well-prepared to deal with [this topic] at trial." Mar. 15, 2023, Op. & Order 37. Having reviewed the

6

expert disclosure of both Mr. Orlowski and Agent Wheeler, both appear to have applied identical methods to come to their conclusions.

Finally, Federal Rule of Evidence 702 requires that I find that Agent Wheeler is qualified to testify "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Agent Wheeler is plainly qualified—she has been a member of the FBI's Cellular Analysis Survey Team (CAST) since March 2012 and has taken five multi-day courses concerning cell site analysis within the last four years. *See* ECF No. 59, Ex. B.

Accordingly, defendant's motion to preclude Agent Wheeler's testimony is denied.

### III. Agent Strasser's Cross-Examination

Ms. Ramsey wishes to cross-examine Agent Strasser about his appearances under the name Geoff Symon in connection with the "Forensics for Fiction" book series both as false representations and to the extent his comments might impeach his testimony on matters relevant to this case. She also requests that I order the government to disclose (1) OIG Policy 385, governing polygraph examinations, and (2) Agent Strasser's curriculum vitae. I will address each argument in turn.

First, Ms. Ramsey argues that "Agent Strasser repeatedly states that he wrote the 'Forensics for Fiction' books" during a podcast appearance dated April 2019 and that since this representation was false, she should be able to cross-examine him about it. Def.'s Strasser Opp'n 1. Federal Rule of Evidence 608(b) only permits extrinsic evidence of specific instances of a witness's conduct "if they are probative" of the witness's "*character for truthfulness or untruthfulness*." Fed. R. Evid. 608(b)(1) (emphasis added).

"Under Federal Rule of Evidence 608(b), the district court may restrict cross-examination about specific instances of prior conduct if it finds that the conduct is not probative of truthfulness." *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002) (determining that testifying witness's

7

link to a prior murder "was not relevant to [his] credibility"). In scenarios where the veracity of a witness's prior statement has been questioned or found untrue, I may allow that witness to be cross-examined about that prior occasion. *See United States v. White*, 692 F.3d 235, 248–51 (2d Cir. 2012) (finding clear error in preclusion of cross-examination of law enforcement witness regarding a prior adverse credibility determination at a suppression hearing). However, not every act is probative of a witness's truthfulness. *See, e.g.*, *United States v. Daniels*, 566 F. Supp. 3d 191, 196 (E.D.N.Y. 2021) (precluding cross-examination of police officer witness regarding Internal Affairs Bureau reports substantiating violations of policies involving paperwork with no credibility determination); *United States v. Steele*, 216 F. Supp. 3d 317, 325–26 (S.D.N.Y. 2016) (allowing cross-examination concerning Civilian Complaint Review Board investigations that did not involve dishonest conduct but resulted in adverse credibility determination); *see also United States v. Devery*, 935 F. Supp. 393, 407 (S.D.N.Y. 1996) ("[C]ase law interpreting the express purpose of Rule 608(b) makes clear that not all prior bad acts are admissible to impeach a witness. Such acts are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness . . . .").

I preclude cross-examination of Agent Strasser concerning his appearances under the name Geoff Symon insofar as Ms. Ramsey wishes to use them to attack his character for truthfulness. The government has represented that Agent Strasser appeared in media as "Geoff Symon" at the request of the true author. Gov't Strasser Mot. 14. That Agent Strasser had permission from the author to appear in this role makes his appearances more in the character of an actor or authorized representative than dishonest impersonation. Further, the government represents that "USPS-OIG management are aware of Special Agent Strasser's involvement in the [Forensics for Fiction] series and have determined [that] his participation in the series does not violate any USPS-OIG

8

policies." *Id.* The fact that Agent Strasser informed his employer of his appearances and that his employer has granted him permission to participate in the "Forensics for Fiction" series tends to show that his appearances as Geoff Symon were not untoward or untruthful. And there is nothing dishonest about sharing a pen name with another person, a longstanding practice in this country. *See, e.g.*, The Federalist Nos. 10 (James Madison, writing as Publius), 23 (Alexander Hamilton, writing as Publius).

Next, Ms. Ramsey identifies a series of statements by Agent Strasser during an appearance under the name Geoff Symon on May 29, 2020 (the "May 29 appearance"), discussing the training undergone by federal polygraph examiners and the reliability of polygraphs, opining that polygraph examination is "a great investigative technique," and explaining his background and experience as a federal agent. Def.'s Strasser Opp'n 2–3. It is unclear whether the statements made during the May 29 appearance convey *Agent Strasser's* experiences and beliefs or the *author's* experiences and beliefs. In other words, the record does not reflect whether the statements were truly Agent Strasser's own. If these statements were made by Agent Strasser because they comport with the experience of the true author, they do not bear on Agent Strasser's credibility and are not a proper subject for cross-examination. If these statements reflect Agent Strasser's own personal experience and opinions, they may be a proper area for cross-examination. Before any cross-examination on these subjects takes place, Ms. Ramsey will first have to establish that Agent Strasser meant these statements to be an expression of his own thoughts and opinions, not Geoff Symon's.[3]

---

[3] This line of questioning will require informing the jury that Agent Strasser made these statements while appearing under the name Geoff Symon. As I have ruled, defendant may not argue that these appearances suggest a character for untruthfulness.

9

Assuming that Ms. Ramsey establishes that Agent Strasser's statements during the May 29 appearance reflect his personal views, she wishes to cross-examine him on these statements because "he chose not [to] perform [a] polygraph examination" of Ms. Ramsey on January 28, 2020. Def.'s Strasser Opp'n 2. Agent Strasser interviewed Ms. Ramsey for several hours on January 28, 2020, but did not administer the polygraph in part because he identified "many examples of Ms. Ramsey not being truthful" in his pre-examination interview of her. *See* Feb. 3, 2022 Hr'g Tr. 146:24–25, ECF No. 35. Defendant argues that "Agent Strasser's statements and views regarding the validity and accuracy of polygraph examinations bear upon the credibility of his reasons for declining to administer the polygraph test with Ms. Ramsey." Def.'s Strasser Opp'n 2. I agree that Agent Strasser's statements praising the utility of polygraphs as an investigative technique are somewhat inconsistent with his decision not to administer the examination to Ms. Ramsey despite interviewing her for several hours. Ms. Ramsey is entitled to pursue questioning that challenges Agent Strasser's choice. Accordingly, Agent Strasser may be cross-examined with his statements during the May 29 appearance on this topic.

Ms. Ramsey contends that the same statements entitle her to review an unredacted version of USPS OIG Policy 385, governing the conduct of polygraph examinations. *Id.* The government previously produced a redacted copy of this policy to defendant at the February 3, 2022, suppression hearing. Ms. Ramsey suggests that because Agent Strasser discussed the "very specific procedures" involved in polygraph examinations and their "quality control[]" in the May 29 appearance, these statements "or his failure to follow those procedures" bear on his credibility regarding Ms. Ramsey's January 28, 2020 interrogation. *Id.* I do not see how Agent Strasser's general statement that there are "very specific procedures" for the purposes of "quality control[]" leads to the conclusion that I must allow Ms. Ramsey to receive an unredacted (or less-redacted)

10

version of Policy 385. Accordingly, I will not order the government to produce this policy. Ms. Ramsey may, however, cross-examine Agent Strasser on topics including the standard conduct of polygraph examinations and his polygraph training.

Ms. Ramsey also requests that I order the government to produce a copy of Agent Strasser's curriculum vitae, so that she may assess the veracity of his statements during the May 29 appearance concerning his professional qualifications and experience. *Id.* at 3 (citing references to, *inter alia*, statements that Agent Strasser has experience with "autopsies from 9/11" and training in "blood spatter analysis"). Again, I note that defendant must first establish that Agent Strasser's statements were his own and that Agent Strasser was not conveying the experiences of the author. If Agent Strasser's professional experience is not what he represented it to be during the May 29 appearance, that is a proper topic for cross-examination because it bears on his credibility. *See* Fed. R. Evid. 611(b) (cross-examination may cover, *inter alia*, matters of witness credibility). However, because Agent Strasser's qualifications will no doubt be the subject of both direct and cross-examination, I see no point in requiring the government to produce Agent Strasser's CV for comparison to his statements during the May 29 appearance. Moreover, the absence of a particular type of case or training from Agent Strasser's CV would not necessarily suggest that Agent Strasser *never* investigated that type of case or undertook that training, only that it is absent from his CV. Finally, the government represents that Agent Strasser does not have an up-to-date version of his CV. *See* ECF No. 61 at 5.

The government has filed a sealed letter requesting that I preclude further cross-examination on certain topics relating Agent Strasser's appearances as Geoff Symon. *See* ECF No. 62 ("Sealed Letter"). Ms. Ramsey indicated that she does not intend to cross-examine Agent Strasser on the content discussed in the Sealed Letter, and I agree that the topics discussed therein

11

are wholly irrelevant to this case and to Agent Strasser's credibility. I further agree that the Sealed Letter should remain sealed, because Agent Strasser's privacy interests outweigh the presumption of public access to the Sealed Letter. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (holding that courts should consider whether the matter to be sealed is "traditionally considered private" or "affect[s] a substantial portion of the public").

## IV. The Jury Charge

I have reviewed the parties' objections to my draft jury charge of March 15, 2023, and have attached a revised jury charge to this opinion (the "Revised Jury Charge"). In addition to line edits, I have made the following substantive changes:

- I have streamlined the instruction concerning unconscious bias to remove repeated references to putting aside biases and the reference to the parties being equal before the law. Both concepts are emphasized throughout the instructions. *See* Revised Jury Charge 7.

- At defendant's request, I have removed the instruction concerning the Number of Witnesses and Items of Evidence.

- I have revised the instruction on "Statements of the Defendant" to remove the particular factors that might bear on the credibility of Ms. Ramsey's statements to law enforcement and instead to emphasize that the jury must make a credibility determination based on "all circumstances in evidence surrounding the making of the statements," tracking the instruction in Sand. *See* Sand et al., *Modern Federal Jury Instructions – Criminal* ¶ 5.07, Instr. 5-19 (hereinafter, "Sand'). I decline to strike the entire instruction because, as I have previously held, Ms. Ramsey is entitled to attack the credibility of her prior statements through competent evidence. Although I give a general instruction on witness credibility, this instruction is not duplicative because Ms. Ramsey's prior statements will not be introduced by her own testimony.

12

- I have revised the instruction concerning the defendant's testimony to be conditional on whether Ms. Ramsey does or does not testify at trial. Revised Jury Charge at 15–16.

- I decline to adopt defendant's proposed modifications to the "How Evidence Was Obtained" and "Uncalled Witnesses" instructions. I will give a separate instruction on the credibility of Ms. Ramsey's statements to law enforcement, making its inclusion in the "How Evidence Was Obtained" instruction unnecessary. The "Uncalled Witnesses" instruction covers juror speculation concerning that an uncalled witness would have said, and Ms. Ramsey's proposed instruction improperly attempts to use that instruction to connect uncalled witnesses to a "lack of evidence presented by the government." *See* ECF No. 65 at 3.

- I deny the government's motion to strike the reference to defense counsel challenging the credibility of a law enforcement witness for "personal or professional interest in the outcome of the case," which is a standard instruction. *See* Sand ¶ 7.01, Instr. 7-16. For the same reason, I deny defendant's motion to strike the prefatory phrase "[a]t the same time."

- I deny Ms. Ramsey's motion to remove or substantially modify the "umbrella hypothetical" in the "Direct and Circumstantial Evidence" based on the Ninth Circuit and New York Court of Appeals model jury instructions regarding circumstantial evidence. The language I use is modified from the Sand instruction on circumstantial evidence. *Id.* ¶ 5.01, Instr. 5-2. Moreover, Ms. Ramsey is incorrect that the hypothetical "suggests that there is no other conclusion that could be inferred from the circumstantial evidence, which erodes the jury's duty to critically interrogate the evidence," ECF No. 65 at 1, because the instruction explicitly notes that the jury "*might* infer" certain facts and cautions that the jury is "*permitted* to draw . . . such *reasonable* inferences or conclusions as seem justified." Revised Jury Charge 6 (emphasis added).

13

- I have adopted the government's additional language defining willfulness so as to avoid jury confusion on what it means to have a "bad purpose . . . to disobey or to disregard the law." *Id.* at 18.

- I have moved the "conscious avoidance" instruction from within the definition of "knowingly" to the description of Count One, in order to make sure the jury understands that the conscious avoidance theory of knowledge applies only to knowledge of the conspiracy's unlawful objective. I have further added a sentence requested by the defendant to the end of the proposed instruction in order to clarify that the government must still prove the other elements of conspiracy. *Id.* at 30.

- I deny Ms. Ramsey's motion to move the *Pinkerton* instruction from Count Two to after the instruction on Count One, and have instead clarified in the *Pinkerton* instruction that I will subsequently instruct the jury on the meaning of conspiracy. *Id.* at 25.

- I have revised the instruction on the second element of Count Two in line with Ms. Ramsey's objections to the extent that they track the corresponding instructions in Sand. Because it is duplicative of my other instructions on mere association and mere presence, I did not include the proposed sentence "[m]ere similarity of conduct or the fact that [the alleged co-conspirators] may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy." *See id.* at 26–33.

- I deny Ms. Ramsey's request to remove the reference to the purpose of the statute underlying Count Three, as this instruction aligns with the instruction in Sand. *See* Sand ¶ 36.01, Instr. 36-2. I also decline to replace the instruction on materiality with the Sand instruction, because the Sand instruction explains "proof of actual reliance on the statement by the government is not

14

required" without defining "actual reliance." *Id.* Instr. 36-11. The instruction as drafted better defines "reliance on the statement" than the Sand instruction.

Final objections to the draft jury instructions and verdict sheet are due on or before 5 p.m. today, March 22, 2023.

SO ORDERED.

_____/s/_____

Allyne R. Ross
United States District Judge

Dated:      March 22, 2023
            Brooklyn, New York